### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA LYNN VAIL, MD, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 24-1535 |
| v. | : | |
| | : | |
| DERMATOLOGY AND | : | |
| MOHS SURGERY CENTER, | : | |
| P.C., et al., | : | |
| Defendants. | : | |

**October 15, 2024**                                   **Anita B. Brody, J.**

### <u>MEMORANDUM OPINION</u>

Plaintiff Barbara Lynn Vail, M.D. ("Dr. Vail") brings this action against five defendants, three of whom are corporate entities: (1) Dermatology and Mohs Surgery Center, P.C. ("DMSC"), that she entered into an employment agreement with; (2) Anne Arundel Dermatology Management LLC ("AADM"), that, along with DMSC, purchased Dr. Vail's former medical practice; and (3) Anne Arundel Dermatology Management Holdings LLC ("AADM Holdings"), that, along with AADM, owns DMSC. She refers to these three defendants collectively as "AAD" and describes them collectively as her former "employer." Dr. Vail names as the remaining defendants two individuals who were decision makers regarding the terms and conditions of her employment: (1) Vincent Bradley, the CEO of AAD; and (2) Robert J. Willard, M.D., an equity owner of AAD who also practiced at

DMSC.  Compl. at 1-2 & ¶¶ 11-12, 35, 93, 95, 97, 138, ECF No. 1.  Defendants

collectively moved to dismiss.  ECF No. 6.

## I.   FACTUAL BACKGROUND[1]

Dr. Vail is a 64-year-old board-certified dermatologist.  Compl. ¶¶ 5, 7.  For

many years, she operated her own practice, Dermatology Specialists of Warrington

("DSW"), in Warrington, Pennsylvania, where she was supported by experienced

staff.  Compl. ¶¶ 27-31.  She customarily referred patients requiring surgery to

DMSC, a practice that operated in Doylestown, Pennsylvania.  Compl. ¶ 35.

Sometime in March 2021, Dr. Vail sold her practice to "AAD, a private-

equity backed practice."  Compl. ¶ 32.  She also executed a contemporaneous

employment agreement effective March 31, 2021 (the "Employment Agreement")

with DMSC.  Compl. ¶ 33.  *See also* Defs.' Mot., Ex. A, ECF No. 6-2

(Employment Agreement).  She alleges that AADM and AADM Holdings own

DMSC.  Compl. ¶ 35.  Pursuant to the Employment Agreement, Dr. Vail continued

to work in Warrington, where her former practice was based.  Compl. ¶ 13.

As a result of the sale of her practice and her Employment Agreement with

DMSC, the control of Dr. Vail's work environment shifted to AAD.  Compl. ¶¶ 13,

---

[1]  Under Rule 12(b)(6), a court construes the complaint in the light most favorable
to the plaintiff and accept the plaintiff's factual allegations as true.  *Phillips v.
County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

32, 35.  AAD began either firing or forcing out her experienced staff and replacing them with inexperienced and poorly trained medical assistants.  Compl. ¶¶ 36-37. Dr. Vail feared for her patients' health and safety and complained to AAD about the lack of effective staff.  Compl. ¶¶ 45-50.

AAD responded by commencing investigations into Dr. Vail, during which it discovered poor Google reviews about her.  Compl. ¶¶ 71-73.  In a letter dated September 8, 2023, AAD accused Dr. Vail of breaching the Employment Agreement and informed her that she was being given an "Opportunity to Cure" period.  Compl. ¶¶ 81-85.  Similarly situated male employees who were the subject of negative Google reviews were not threatened with termination.  Compl. ¶¶ 84, 91-98.

Dr. Vail ultimately received a termination notice on October 25, 2023. Compl. ¶ 88.  She was subsequently replaced by, or her job duties were reassigned to, employees of AAD younger than Plaintiff and believed to be under the age of 40.  Compl. ¶ 100.  After her termination, Dr. Vail took a position with another practice, Dermatology Partners.  Defendants, however, represented on their websites that Dr. Vail either remained on staff or had retired from practicing medicine.  Compl. ¶¶ 108-11.

Dr. Vail exhausted her administrative remedies and then filed this action on April 12, 2024.  She initially asserted eleven counts but withdrew some of the

claims in response to Defendants' motion. *See* ECF Nos. 1, 6, 11. The remaining counts brought only against the institutional defendants are: (1) breach of contract; (2) wrongful termination in violation of public policy; (3) gender discrimination and retaliation in violation of Title VII; (4) age discrimination; and (5) a request for a declaratory judgment invalidating restrictive covenants contained in the Employment Agreement. The remaining counts brought against all defendants, that is, the AAD defendants plus Mr. Bradley and Dr. Willard, are: (1) violation of the Pennsylvania Whistleblower Law; (2) violation of the Pennsylvania Wage Payment & Collection Law; (3) unauthorized use of her likeness; and (4) unjust enrichment.

## II.   DISCUSSION

Defendants seek dismissal of the complaint under Rule 12(b)(6) as to all defendants. As to Defendant Bradley, they move to dismiss for lack of personal jurisdiction under Rule 12(b)(2). Defendants also ask the court to strike the complaint's demand for a jury trial. ECF No. 6 ("Defs.' Mot."); ECF No. 6-1 ("Defs.' Mem.").

### A.   Motion to Dismiss under Rule 12(b)(6)

Defendants seek dismissal of the complaint in its entirety under Rule 12(b)(6), which provides for dismissal for failure to state a claim upon which relief can be granted. To survive a motion under this rule, the complaint must allege

facts sufficient to "raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  These standards give rise to the following approach:

> First, the court must take note of the elements a plaintiff must plead to state a claim.  Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (citations omitted).

### 1.      Count I: Breach of contract (v. AAD)

Dr. Vail asserts a breach of contract action against AAD arising from the Employment Agreement she signed with DMSC.  She must plead: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999).

The existence of a contract and its essential terms are established by the

Employment Agreement, which is in the record.[2]  Dr. Vail was to be employed with DMSC for an initial term of five years, until March 31, 2026, unless her employment was terminated earlier under Section 9 of the Agreement.  Section 9.3.5 permitted DMSC to immediately terminate Dr. Vail's employment if she were grossly negligent or incompetent in the performance of her duties.  Section 9.3.4 permitted termination upon her failure to faithfully and diligently perform her job duties or adhere to her contract provisions after receiving 30 days' written notice detailing the deficiencies and providing an opportunity to cure.  Empl. Agr't at 14, ECF No. 6-2.  Dr. Vail alleges that AAD unjustly accused her of gross negligence or incompetent performance of duties to justify terminating her employment soon after acquiring her practice.  Compl. ¶¶ 88-89.

Dr. Vail's allegations in the complaint plausibly allege breach of contract.  I will deny the motion as to Count I.[3]

---

[2]  Defendants attach a copy of the Employment Agreement to the motion to dismiss.  Dr. Vail does not contest the correctness of that document, to which her complaint refers.  I may consider it as part of the pleadings.  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

[3]  Defendants assert that Count I, which was brought against "the AAD Defendants" – i.e., DMSC, AADM, and AADM Holdings – must be dismissed as to AADM and AADM Holdings because only DMSC contracted with Dr. Vail in the Employment Agreement.  I decline to dismiss the other institutional defendants on this record.  Dr. Vail alleges that "AAD" purchased her practice, Compl. ¶ 32; that "AAD" employed her, Compl. ¶ 13; and that AADM and AADM Holdings "owned" DMSC, Compl. ¶ 35, which was the entity with which she formally contracted for employment.  She consistently attributes her termination to the

###### 2.     Count II: Pennsylvania Whistleblower Law (v. all defendants)

Dr. Vail seeks relief against all Defendants under the Pennsylvania Whistleblower Law, 43 P.S. § 1422, *et seq.* (the "PWL"). The PWL prohibits employers from retaliating against an employee for a report of "an instance of wrongdoing or waste by a public body" or "an instance of waste by any other employer as defined in this act." 43 P.S. § 1423(a). Defendants contend they are neither a "public body" nor an "employer" subject to the PWL.

A "public body" is a state or local government subdivision or other employer which receives public funding to perform works for, or to, a public body. 43 P.S. § 1422. Dr. Vail alleges that "the Defendants" "each receive public funds" and "accepted Medicare payments, and monies pursuant to the Provider Relief Fund (COVID-19 pandemic funds) of more than $2.1 million combined, and Paycheck Protection Program (PPP) funds of $490,400." Compl. ¶¶ 122-23. My colleague, Judge Wendy Beetlestone, has reasoned that the Pennsylvania Supreme Court would likely consider an employer subject to the PWL if it received Medicare and Medicaid reimbursements from the Commonwealth. *See Gloukhova v. CSL Behring LLC*, Civ. A. No. 22-2223, 2022 WL 16722314 (E.D. Pa. Nov. 4,

---

actions of "AAD" or "the AAD Defendants," not just DMSC.

I will give Dr. Vail the opportunity for discovery on the relationship between the various entities she has sued.

2022).  I accept this analysis.  Accordingly, Dr. Vail has adequately pled that the Defendants are a "public body."

The PWL's anti-retaliation provision protects an employee who reports "an instance of wrongdoing or waste."  43 P.S. § 1423(a).  Dr. Vail complained about patient safety concerns, as well as her perception of "wrongdoing and negligence with the practice."  Compl. ¶¶ 45, 49, 65(o), 71, 78, 125, 129.  These allegations suffice under 43 P.S. § 1422.  I will deny the Defendants' motion to dismiss the PWL claim.

### 3. Count III: Pennsylvania Wage Payment & Collection Law (v. all defendants)

Dr. Vail alleges in Count III that she "has not been paid for work already completed," in violation of Pennsylvania's Wage Payment and Collection Law, 43 P.S. § 260.1, *et seq.* (the "WPCL").  Compl. ¶ 137.

The WPCL requires that "every employer" pay its employees on a regular schedule for "all wages … earned" in the pay period.  43 P.S. § 260.3(a).  To be "earned," the right to a wage or bonus must have vested under the terms of employment, which may be set out in an employment contract.  *H & R Block Eastern Tax Servs., Inc. v. Zarilla*, 69 A.3d 246, 252 (Pa. Super. Ct. 2013).

Dr. Vail's Employment Agreement provided a formula for the computation of her earnings based on net fees and expenses.  Empl. Agr't ¶ 6.1, ECF No. 6-2. The formula encompassed fees collected for services that Dr. Vail personally

furnished to patients as well as collections generated from mid-level providers that she supervised.  The Employment Agreement also guaranteed additional salary to be paid even after separation from employment for subsequent collections by DMSC.  Empl. Agr't ¶ 6.2, ECF No. 6-2.

Dr. Vail alleges she was not paid for work performed as to approximately 100 patients she had seen at the time of her termination for whom medical charts and records had not been completed by her.  Compl. ¶ 134.  Defendants assert that Dr. Vail's wages "are not earned or vested until the fees are actually collected by DMSC," and that she did not "earn" wages from charts that were incomplete at the time of her termination.  Defs.' Mem. 10.  But her claim is not precluded as a matter of law.  Discovery may well reveal that additional wages were earned by Dr. Vail under the terms of her Employment Agreement and that she is entitled to recover under this statute.  I will deny Defendants' motion to dismiss the WPCL claim at this stage.

### 4.    Count IV: Wrongful termination (v. AAD)

Dr. Vail next alleges a cause of action under Pennsylvania common law for wrongful termination of her employment in violation of public policy.  She pleads that Defendants "required [her] to commit various state and federal crimes; and/or prevented [her] from complying with statutorily imposed duties" and that they terminated her "as a result of her good faith reporting of the fraudulent and illegal

9

activities" described in her complaint, in violation of public policy.  Compl.

¶¶ 146-47.  Dr. Vail pleads this claim in the alternative, in the event her

employment contract is somehow not "enforceable or viable."  Pl. Opp. at 13.  *See*

*also* Compl. at 28 (Count IV heading).

Vail pleads this claim in the alternative.  Therefore, I will not dismiss it at

this stage of the litigation.  Defendants may renew their arguments at the close of

discovery.

### 5.      Count V: Declaratory judgment as to restrictive covenants (v. AAD)

In Count V, Dr. Vail seeks a declaration under the federal and state

Declaratory Judgment Acts, 42 Pa. Cons. Stat. § 7531, *et seq.*, and 42 U.S.C.

§ 2201, that restrictive covenants in the Employment Agreement, including a non-

competition provision, "are null and void and of no further effect."  Compl. ¶ 167.[4]

She contends it would be "inequitable" for AAD to enforce the restrictive

covenants found in the Employment Agreement and the Asset Purchase

Agreements because AAD "deprived [her] of the benefits of the bargain of the

Asset Purchase Agreement."  *Id.* ¶¶ 160, 163.  In response to Defendants'

---

[4]  She is restricted both from working for a competitor medical practice within a certain geographic area for a period of years and from soliciting either the patients or employees of AAD due to covenants contained in the Employment Agreement and the Asset Purchase Agreement that she entered into with DMSC, AADM, and AADM Holdings.  Compl. ¶¶ 153-55, 157-59.

objections her claims do not present an actual case or controversy, she notes that her complaint reflects that she "[took] a position with Dermatology Partners." Pl.'s Opp. at 16 (citing Compl. ¶ 111).

This count is part of a broader lawsuit concerning the effects of Defendants' conduct, and the case is proceeding to discovery.  I will deny Defendants' motion to dismiss this count without prejudice to them to re-assert their justiciability argument, if warranted, at the close of discovery.

### 6.    Count VI: Title VII gender discrimination and retaliation (v. AAD)

Dr. Vail next asserts that her termination reflected both discrimination on the basis of her gender and unlawful retaliation for protected activity.

### a.  Discrimination

An employer may not "discharge any individual … because of such individual's … sex."  42 U.S.C. § 2000e-2(a).   To state a prima facie case of sex and/or gender discrimination under Title VII, a plaintiff must "show that (1) she is a member of a protected class; (2) she was qualified for her position; (3) the particular disciplinary measure was an adverse employment action; and (4) the circumstances of the disciplinary measure give rise to an inference of discrimination."  *Jones v. Southeastern Pa. Transp. Auth.*, 796 F.3d 323, 327 (3d Cir. 2015).

Defendants argue that Dr. Vail's Title VII discrimination claims must be

11

dismissed because she has failed to establish the fourth element of a prima facie case—that the circumstances of her termination give rise to an inference of discrimination.  Defs.' Mem. at 14.[5]  However, "for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 788 (3d Cir. 2016).  Rather, "[t]he complaint need only allege enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021).  *See also In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1420 (3d Cir. 1997) ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.").

　　　Here, Dr. Vail has pled that she was treated differently than male colleagues: (1) she was told to conform to gender stereotypes when she was admonished to "be nice," and (2) she was terminated on the basis of alleged patient and staff complaints when male colleagues with negative reviews were not.  Compl.

---

[5]  As they do concerning the other counts of discrimination and retaliation, Defendants contend that some of the incidents that Dr. Vail identifies as indicative of Defendants' discriminatory motive "fall outside of the statute of limitations for a Title VII claim" and thus cannot support her cause of action.  Defs.' Mem. at 14. Defendants misapprehend the application of the limitations period.  Dr. Vail need only have filed her charge of discrimination within 300 days of the adverse employment action, which was the termination of her employment.  42 U.S.C. § 2000e-5(e)(1).  She is not prohibited from pointing to events predating her termination in support of her claim about her employer's improper motivation.

¶¶ 65(a), 91-96.  These allegations are sufficient to entitle her to discovery on this claim of sex discrimination.  *See Sharifi v. American Red Cross*, No. CV 21-2873, 2022 WL 125930, *7 (E.D. Pa. Jan. 12, 2022) (inferring that supervisor treated employees more favorably when they conformed to certain gender stereotypes where he promoted another female candidate over female plaintiff for "being nice"); *id.* (finding gender discrimination sufficiently pled where plaintiff was fired for tardiness but other employees were not).

Dr. Vail's allegations raise a reasonable expectation that discovery will reveal evidence that her termination occurred under circumstances giving rise to an inference of discrimination.  I will deny Defendants' motion to dismiss the gender discrimination claim.

### b.  Retaliation

Title VII also prohibits retaliation for opposition to unlawful conduct and participation in remedial proceedings:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a).  A retaliation claim will survive a motion to dismiss if a plaintiff "pleads sufficient factual allegations to raise a reasonable expectation that

13

discovery will reveal evidence of the following elements: (1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action." *Connelly v. Lane Const. Corp*., 809 F.3d 780, 789 (3d Cir. 2016).

Defendants contend that the only allegation in Dr. Vail's complaint that she engaged in conduct protected by Title VII was her remark to Mark Lauro, Director of Human Resources, and Scott Mahosky, then-CEO, in which she suggested that the criticisms they expressed about her being "dismissive" of others might not have been brought up to a male physician. Compl. ¶ 65(e). Defendants argue that "this single question" posed by Dr. Vail "is clearly insufficient to constitute a protected activity under Title VII." Defs.' Mem. at 17. But courts recognize that protected activity encompasses both formal and informal charges and protests of discriminatory employment practices, "including making complaints to management … [and] protesting against discrimination by industry or society in general…." *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006) (internal quotation marks and citations omitted).

Dr. Vail's remark to Defendants' managers that she did not believe they would criticize a male for being "dismissive" is a viable complaint to Defendants of disparate treatment based on gender. I will deny Defendant's motion to dismiss the Title VII retaliation claim.

14

### 7.      Count VII: ADEA age discrimination (v. AAD)

Dr. Vail asserts in Count VII that her termination was also an act of age discrimination.  Defendants contend that her pleading as to this claim is legally insufficient because she failed to identify any specific employee who replaced her. Defs.' Mem. at 19; Defs.' Reply at 8-9.

The ADEA prohibits employers from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  A plaintiff states a claim for age discrimination under the ADEA if he or she alleges that "(1) he is over forty, (2) he is qualified for the position in question, (3) he suffered from an adverse employment decision, and (4) his replacement was sufficiently younger to permit a reasonable inference of age discrimination." *Hill v. Borough of Kutztown*, 455 F.3d 225, 247 (3d Cir. 2006). Where the plaintiff is not directly replaced, however, the fourth element is satisfied through circumstances which, "if otherwise unexplained, are more likely than not based on the consideration of impermissible factors."  *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015).

Dr. Vail was over 40 years old and was terminated from a position for which she was qualified.  She thus satisfies prongs 1, 2, and 3 of the ADEA requirements. She has also adequately pled circumstances related to her employment and

15

termination that suggest discovery could reveal that her age was a determinative factor in the termination decision. Her complaint recounts statements from Messrs. Mahosky and Lauro that her interactions with staff were not keeping up with the times and that "it's a different world tha[n] it was 30 years ago." Compl. ¶ 65(a). She also pleads that she was replaced by, or her duties were transferred to, younger individuals. Her facts as pled must be accepted as true at this stage of the proceedings. I will deny the motion to dismiss the ADEA discrimination claim asserted in Count VII.

### 8.   Count X: Unauthorized use of likeness (v. all defendants)

Dr. Vail next asserts a cause of action against all Defendants under 42 Pa. Cons. Stat. § 8316 for unauthorized use of her name or likeness. This claim arises from alleged "inaccurate information" on "AAD's website" about Dr. Vail's association with AAD, including both a suggestion that she remained associated with AAD after she separated and a representation on a different webpage that she had retired from practicing dermatology. Compl. ¶¶ 108-11. Defendants contend that Dr. Vail has not pled that they acted with the requisite knowledge. Defs.' Mem. at 21.

Pennsylvania recognizes a private right of action for any person "whose name or likeness has commercial value" and is used for any commercial or advertising purpose without written consent. 42 Pa. Cons. Stat. § 8316(a). The

statute shields from liability any defendant that lacked "actual knowledge of the unauthorized use of the name or likeness[.]"  *Id.* § 8316(d).

Defendants appear to believe they are entitled to that protection but present only irrelevant arguments.  They cannot dispute that their websites represented that Dr. Vail either remained on staff or had "retired from practicing dermatology in October 2023."  They had no reason to believe either was true and they did not have her authorization to make the representations they did.  Her complaint sufficiently alleges that her name has commercial value, as she practiced dermatology in the area for many years.  And Defendants' website would certainly have a "commercial or advertising purpose."  42 Pa. Cons. Stat. § 8316(a).  Regardless of the knowledge Defendants did or did not have about Dr. Vail's continued practice of dermatology following her separation from AAD, the complaint does not establish that Defendants are entitled to immunity under § 8316(d).  I will deny Defendants' motion to dismiss this count.

### 9.   Count XI: Unjust enrichment (v. all defendants)

Dr. Vail asserts her final claim – for unjust enrichment – against all Defendants "in the alternative."  Compl. at 42 (heading).

To recover under the state law doctrine of unjust enrichment, a plaintiff must demonstrate:

> (1) the benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3)

> acceptance and retention of such benefits under such
> circumstances that it would be inequitable for defendant
> to retain the benefit without payment of value.

*Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 179 A.3d 1093, 1102 (Pa. 2018).  The plaintiff must show that defendants "either wrongfully secured or passively received a benefit that ... would be unconscionable for [them] to retain." *Sovereign Bank v. BJ's Wholesale Club, Inc.,* 533 F.3d 162, 180 (3d Cir. 2008) (quoting *Torchia v. Torchia*, 499 A.2d 581, 582 (Pa. Super. Ct. 1985)).

Dr. Vail's complaint at Count XI described two areas in which Defendants have been unjustly enriched: (1) "by virtue of the revenue they received from Plaintiff's services for which they did not pay," Compl. ¶ 208, and (2) "by creating the false impressions that Plaintiff is associated with AAD or retired from the profession entirely, thereby diverting past and potential consumers of Dr. Vail's services to those of AAD's various practices," *id.* ¶ 209.

Discovery will shed light as to the circumstances under which Defendants received any benefits that would be unconscionable for them to retain.  Dr. Vail's pleading of this claim is not legally deficient.  Count XI will survive the motion to dismiss.

## B.     Motion to Strike Jury Demand

Defendants' motion also asks me to strike the jury demand in Dr. Vail's suit.

18

Defendants move under Rule 39 of the Federal Rules of Civil Procedure and rely

upon the following provision of the Employment Agreement under a section of

"Miscellaneous" terms in the final section:

> 13.3   No Jury Trial.  Neither party shall elect a trial by
> jury in any action, suit, proceeding or counterclaim
> arising out of or in any way connected with this
> Agreement.

Empl. Agr't at 23, ECF No. 6-2.

Dr. Vail responds that the effect of the jury waiver may depend on the

outcome of discovery.  She also suggests that the waiver may become ineffective

following a breach of the contract by DMSC.  In addition, she contends that the

waiver provision would extend only to contractual claims and not the several

statutory claims that will survive the motion to dismiss.

Courts in our circuit will enforce a jury waiver as knowing and voluntary

"when the facts show that (1) there was no gross disparity in bargaining power

between the parties; (2) the parties are sophisticated business entities; (3) the

parties had an opportunity to negotiate the contract terms; and (4) the waiver

provision was conspicuous." *Bessemer Sys. Fed. Credit Union v. Fiserv Sols.,*

*LLC*, 472 F. Supp.3d 142, 181-82 (W.D. Pa. 2020).  Even so, "there is a

presumption against waiver, [and] Courts do not uphold jury trial waivers lightly."

*First Union Nat. Bank v. United States*, 164 F. Supp.2d 660, 663 (E.D. Pa. 2001).

The burden of proving a valid waiver is on the party seeking to enforce it.  *Id.*

These questions necessarily involve the consideration of facts that are not before me at this stage of proceedings. I will deny the motion concerning the jury demand without prejudice to Defendants to re-assert following the close of discovery.

### C.     Motion to Dismiss under Rule 12(b)(2)

Finally, Defendants' motion makes an argument that pertains only to Defendant Bradley and challenges this Court's jurisdiction over him. Mr. Bradley asserts that he is domiciled in Maryland and is not subject to the jurisdiction of courts in Pennsylvania. Defs.' Mem. at 22-23. Dr. Vail concedes that the Court lacks general jurisdiction over Mr. Bradley but contends that he is subject to this Court's specific jurisdiction. Pl.'s Opp. at 28-31.

Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). For a court to assert specific jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

The Third Circuit has distilled these considerations into three key elements. "First, the defendant must have 'purposefully directed [its] activities' at the

20

forum." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007)

(quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  This

requires the court to evaluate whether "the defendant's conduct and connection

with the forum State are such that he should reasonably anticipate being haled into

court there." *Burger King*, 471 U.S. at 474 (quotation omitted).  "Second, the

litigation must 'arise out of or relate to' at least one of those activities." *O'Connor*,

496 F.3d at 317 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466

U.S. 408, 414 (1984)).  Third, "a court may consider whether the exercise of

jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" *Id.*

(quoting *Burger King*, 471 U.S. at 476).

Defendant Bradley is identified in the complaint as "the current Chief

Executive Officer of AAD" and by his address at AADM in Maryland.  Compl.

¶ 11 & 1.  Dr. Vail describes him as a decision maker regarding her employment at

AAD, including "her compensation and termination[.]"  Compl. ¶ 11.  Although

she nominally identified him in other counts brought against "all Defendants," she

now seeks to pursue only the WPCL claim against him.  *See* Pl.'s Opp. at 29-31;

Defs.' Reply at 9.

Personal liability of an "agent or officer" for unpaid wages under the WPCL

will require "evidence of an active role in decision making[.]"  *Mancini v.

Concorde Grp.*, No. 2233 EDA 2013, 2014 WL 10575398, at *10 (Pa. Super. Ct.

21

Sept. 25, 2014).  The employee may be able to establish this if "the 'agent or officer' was actively involved in corporate policy-making, such as corporate decision-making or corporate advisement on matters of pay or compensation."  *Id.*

The merits of the WPCL claim against Mr. Bradley overlap significantly with the questions of specific personal jurisdiction over him, i.e., the degree of his involvement in Dr. Vail's compensation and the determination of the salary payments due to her in Pennsylvania upon and following her termination.  She has made sufficient allegations in this area.  *See* Compl. ¶ 11 (describing Bradley as a decision maker regarding her compensation, employment, and termination).

It would not be an efficient use of the parties' or the court's resources to further evaluate these questions at this early stage.  The parties are currently under a scheduling order and should have begun discovery.  The discovery phase will not be any more burdensome to or onerous upon Mr. Bradley if consideration of his jurisdictional challenge is deferred until a more complete record is established.[6] Mr. Bradley will be free to renew his jurisdictional objection following discovery.

## III.   CONCLUSION[7]

I deny Defendants' 12(b)(6) motion, their motion to strike the jury demand,

---

[6] Mr. Bradley is jointly represented with the other defendants.

[7] Dr. Vail has withdrawn Counts VIII and IX, as well as the ADEA retaliation component she asserted as part of Count VII.

22

and Mr. Bradley's 12(b)(2) motion, all without prejudice to Defendants to reassert

at a later stage of the litigation.

An appropriate order follows.

_____s/ANITA B. BRODY, J._
ANITA B. BRODY, J.